UNITED STATES *v.* CHRISTIAN ECHOES NATIONAL MINISTRY, INC.

No. 71-565.   Decided January 24, 1972

PER CURIAM.

This case began when the Internal Revenue Service revoked the tax-exempt status of the appellee, a nonprofit religious corporation.   The appellee had previously enjoyed a tax exemption under § 501 (c)(3) of the 1954 Internal Revenue Code, 26 U. S. C. § 501 (c)(3).   This section defines exempt organizations, in pertinent part, as:

> "Corporations . . . organized and operated exclusively for religious . . . purposes . . . , no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legisla-

tion, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office."

The appellee's exemption under this provision was revoked on three grounds: (1) that the appellee was not operated exclusively for religious purposes, (2) that it had engaged in substantial activity aimed at influencing legislation, and (3) that it had intervened in political campaigns on behalf of candidates for public office.

The appellee paid the taxes assertedly owed and then filed the present suit for a refund in Federal District Court, claiming that it was entitled to an exempt status under § 501 (c)(3) of the Code. The case was heard by a single District Judge sitting without a jury. The judge ultimately decided that the appellee was entitled to tax-exempt status and to a refund of the taxes paid.[1]

The District Court rejected all three grounds on which the Internal Revenue Service had revoked the appellee's exempt status. It found, as fact, (1) that the appellee's "activities have been directed toward achieving its religious goals," (2) that "[w]ith the exception of support of the proposed Becker Amendment to the United States Constitution relating to voluntary prayer and Bible reading in public schools, [the appellee] has not engaged in attempts to influence legislation," and (3) that the appellee "has not endorsed a political candidate, and has not instructed its followers as to how to vote but only to vote." On the basis of its findings of fact, the court concluded as law that the appellee fell within the terms of § 501 (c)(3). That ended the case. But the District Court nonetheless went on to discuss certain constitutional issues.

---

[1] The findings of fact and conclusions of law of the District Court in this case, entered on June 24, 1971, are not officially reported.

In its conclusions of law, the court stated that the First Amendment prohibits both the Government and the courts from determining whether a religious organization is operated for exclusively religious purposes, and is thus eligible for tax-exempt status, by analyzing each and every activity of the organization and classifying it as "religious" or "political." In this case, the court said, the Internal Revenue Service conducted and relied upon such an analysis in revoking the appellee's exemption and, for that reason, the Service denied the free exercise of religion to the appellee. The District Court also stated that the Internal Revenue Service violated the appellee's right to due process of law by singling it out, among all other religious organizations, for investigation and exemption revocation "without evidence to support its action."

The United States seeks to appeal the decision of the single District Judge directly to this Court. It argues that we have jurisdiction under 28 U. S. C. § 1252. That jurisdictional provision allows a direct appeal to the Supreme Court from the decision of "any court of the United States . . . holding an Act of Congress unconstitutional in any civil action, suit, or proceeding to which the United States . . . is a party." Such a direct appeal is allowed whether the Act of Congress was declared unconstitutional "as a whole" or simply "as applied." *Fleming* v. *Rhodes,* 331 U. S. 100, 102–103. The findings and conclusions of the District Court in the present case, however, reveal that it did not hold § 501 (c)(3) unconstitutional in either of these ways. Hence, we must dismiss this appeal for want of jurisdiction.

The "basis" of the District Court's decision, *United States* v. *Raines,* 362 U. S. 17, 20, was that, under the facts adduced at trial, the appellee qualified for exempt status under § 501 (c)(3). The court did not question or even consider the constitutionality of § 501 (c)(3) "as

a whole." Nor does any part of its opinion hold that the section was unconstitutional "as applied." Indeed, the court in this case would hardly have found the appellee to be qualified for an exemption under § 501 (c)(3), only to hold that the section could not be validly applied in the first place.

The District Court's commentary on the denial of due process to the appellee was directed simply to the *method* by which § 501 (c)(3) was enforced [2]—not to its basic applicability. The court held that the Internal Revenue Service may not discriminate in applying the section. This holding restricts freewheeling enforcement and may make it more difficult to revoke certain tax exemptions. But it does not call into question the validity of the underlying statute. Under § 1252, direct appeal to the Supreme Court is authorized only in the latter situation.

Similarly, the District Court's commentary on the denial of the appellee's First Amendment rights was directed to the particular interpretation given to § 501 (c)(3) by the Internal Revenue Service in this case and to its means of enforcing that interpretation. At most, the court's reasoning on this point can be read to construe § 501 (c)(3) narrowly so as to avoid a First Amendment problem.[3] The court refused to interpret

---

[2] By far the greatest portion of the District Court's findings of fact are directed to the detailed history of the Government's investigation of the appellee's exempt status.

[3] For example, the District Court stated:

"43. [The appellant] has characterized certain of [the appellee's] activities during the years involved in this suit as urging the public to contact members of legislative bodies for the purpose of proposing, supporting or opposing legislation. [The appellee] has characterized the same activities as taking stands on issues of the day concerning matters which it construes to threaten its religious beliefs. The Court finds that these activities have resulted from [the appellee's] religious beliefs and were merely incidental to the

and apply the section to require an analysis of the "religious" or "non-religious" character of every activity by a concededly religious organization, because such an interpretation and application would infringe the right to free exercise of religion. It stated that the Internal Revenue Service had already gone too far in its enforcement of this interpretation. But the statement that the *Service* violated the appellee's First Amendment rights is not the same as a holding that *Congress* did so in enacting § 501 (c)(3). The court avoided holding that the section itself was unconstitutional "as applied"—*i. e.*, that the section, by its own terms, infringed constitutional freedoms in the circumstances of the particular case. Rather, it held that the Service had misinterpreted § 501 (c)(3) and that the section must be narrowly construed.[4] Although the construction was

---

exercise of its religion and the expression and dissemination of its understanding of biblical concepts. The Court further finds that any such activities by [the appellee] were insubstantial in relationship to the totality of [the appellee's] activities.

"44. [The appellant], in describing and characterizing [the appellee's] activities as political and non-religious, has in fact indicated a disagreement with the content and nature of what [the appellee] has said and written. [The appellant] has thereby sponsored its own definitions of 'religion' and 'religious.' Such definitions by [the appellant] are impermissable [*sic*]. . . .

"45. [The appellee's] expression of opinion on 'current issues or issues of the day' is not an act contemplated by prohibition against intervention in political campaigns or legislation and is not a violation of the provisions of Internal Revenue Code."

[4] A similar distinction has been drawn in the context of the three-judge district court statute, 28 U. S. C. § 2281. "It is necessary to distinguish between a petition for injunction on the ground of the unconstitutionality of a statute as applied, which requires a three-judge court, and a petition which seeks an injunction on the ground of the unconstitutionality of the result obtained by the use of a statute which is not attacked as unconstitutional. The latter petition does not require a three-judge court. In such a case the attack is aimed at an allegedly erroneous administrative action." *Ex parte Bransford*, 310 U. S. 354, 361.

based on a constitutional premise, it did not amount to a holding that an Act of Congress is unconstitutional, as contemplated by § 1252. To the contrary, the District Court construed the section so as to save its constitutionality.

Our interpretation of the District Court's conclusions of law does not, of course, indicate approval of those conclusions. The issue is not before us. We hold only that there is an absence of appellate jurisdiction under § 1252.

The judgment is vacated and the case remanded to the District Court for the entry of a fresh decree, so that the appellant may appeal to the United States Court of Appeals for the Tenth Circuit.

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.