B. Wilson **REDFEARN** et al.,
Plaintiffs,

v.

**DELAWARE REPUBLICAN STATE COMMITTEE** and Herman C. Brown, Chairman, Defendants,
Basil R. Battaglia et al., Intervening Defendants,
James H. Baxter, Jr., et al., Intervening Defendants,
Charles G. Lamb et al., Intervening Defendants.

Civ. A. No. 4528.

United States District Court,
D. Delaware.

July 27, 1973.

B. Wilson Redfearn, pro se.

William O. La Motte, III and Thomas Reed Hunt, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for plaintiffs other than Redfearn.

William Swain Lee and Michael Joseph Rich, Georgetown, Del., for defendants.

Victor F. Battaglia, G. Thomas Sandbach and Gary W. Aber of Biggs & Battaglia, Wilmington, Del., for intervening defendants, Basil R. Battaglia and others.

Howard T. Ennis, Jr. and Paul Reed, Georgetown, Del., for intervening defendants, James H. Baxter and others.

A. Richard Barros, Dover, Del., for intervening defendants, Charles G. Lamb and others.

## OPINION

LATCHUM, District Judge.

This suit arises out of an on-going dispute among members of the Delaware Republican Party over the apportionment of delegates to the Republican State and National Nominating Conventions. It was instituted as a class action [1] by a group of registered Republicans from the Second Convention District [2] who seek redress under the

---

1. In accordance with Rule 23(c)(1), F.R. Civ.P., the Court determined that this suit could be maintained by the plaintiffs as a class action under Rule 23(a) and (b)(1) on behalf of all Republican voters registered in the Second Convention District and all delegates from the District who were delegates to the 1972 Republican Convention and continue as such should a Special Convention be called.

2. The Second Convention District comprises all of New Castle County outside the corporate limits of the City of Wilmington.

Civil Rights Act, 42 U.S.C. § 1983, for an alleged deprivation of equal voting rights in the Republican Party nominating processes. The case is before the Court on plaintiffs' motion for summary judgment.[3]

All of the named plaintiffs are registered Republican voters of the Second District and are or were officers [4] of the Second District Republican Committee, the Republican Party's governing body in the Second District. All the plaintiffs, except Paintin and Kirtley, were delegates to the 1972 Republican State Convention from the Second District. The defendants are the Delaware Republican State Committee and its Chairman. The Court also permitted other registered Republican voters, District Committee officers and 1972 State Convention delegates from each of the other three Convention Districts of the State to intervene as defendants.[5]

Jurisdiction is vested in the Court by virtue of 28 U.S.C. § 1343(3) and (4). The gist of the complaint alleges that the Republican State Committee, acting under authority of State laws, has denied the plaintiffs in the Second District, the most populous area of the State, equal voting participation in the nomination processes for Republican presidential and State-wide office candidates. Both declaratory and injunctive relief is sought under 28 U.S.C. §§ 2201 and 2202.

Specifically, the plaintiffs contend that the Republican State Committee's present method of allocating delegates to the Republican State and National Conventions among the four existing State Convention Districts is violative of the equal protection clause of the Fourteenth Amendment because it totally ignores the "one man, one vote" principle originally enunciated by the Supreme Court in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Plaintiffs argue that the one man, one vote principle, applicable to a direct party-primary nominating method, applies as well to a party-convention system used to nominate party candidates and to select delegates to the National Convention.

The Delaware Republican Party is, as defined by 15 Del.C. § 101, a "political party, organization or association which elects delegates to a National Convention, nominates candidates for electors of President and Vice-President, United States Senator, Representative in Congress, Governor, and other offices,[6] and elects a State Committee and officers of a State Committee by a State Convention composed of elected members from each Representative District, provided a registered party member is available in each Representative District."

Under its rules, the Republican Party is territorially divided into four Convention Districts: The City of Wilmington is the First Convention District; New Castle County outside of Wilmington is the Second Convention District; Kent County is the Third Convention District; and Sussex County is the Fourth Convention District.[7]

At the call of the State Committee the Delaware Republican Party holds an annual State Convention composed of 220

3. There is no genuine issue of any material fact. Rule 56(c), F.R.Civ.P.

4. Plaintiff B. Wilson Redfearn at the time suit was filed was Chairman of the Republican Second Convention District Committee. Plaintiff Joan Zimmerman is Vice-Chairman, plaintiff Donald R. Kirtley is Deputy Chairman, plaintiff Francis A. Paintin is Secretary of the Second District Committee and plaintiff Richard E. Colgate is Chairman of the Brandy-

wine Region, one of several regions comprising the Second District.

5. The defendants and interveners will be referred to herein collectively as the "defendants".

6. Other offices include State-wide candidates for Lt. Governor, Insurance Commissioner, State Auditor and State Treasurer in applicable years.

7. Rule 2, Ex. A to Docket Item 23.

delegates.[8] 120 of the delegates are distributed on the basis of 30 delegates to each of the four Convention Districts. The remaining 100 delegates are allotted among the Convention Districts on the basis of one delegate for each 1% of the State-wide Republican vote which was cast by voters in that District during the last Presidential election. The Republican vote for such purposes is determined by averaging the vote for the Republican candidates for State Treasurer and State Auditor.

The distribution of the allotted delegates within the four Convention Districts is made pursuant to the Convention District Committee rules.[9] Any person desiring to stand for election as a delegate to a State Convention must notify the District Chairman in writing on a form provided by the State Election Commissioner by a date and time certain. 15 Del.C. § 3107(a)(2)(ii). If two or more persons file as candidates for the same delegate position, a primary election conducted by the State Election officials on a day certain is held. 15 Del.C. §§ 3102, 3109. The expenses of that primary election are paid by the State. 15 Del.C. § 3113. State voting machines and official registration records and poll books of the State's Election Departments are used. 15 Del. C. §§ 3121–3126, 3128. Electors may vote in the Republican primary elections for delegates only if they are shown on the State's registration records as being registered Republicans at least twenty-one days prior to the election. 15 Del.C. § 3111. In all other respects the voting procedure of the Republican primary election is conducted according to the State's general election laws. 15 Del.C. § 3161.

The Republican State Convention in even numbered years nominates Republican candidates for National and State-wide offices which are to be filled at the General Elections occurring in November of those years. 15 Del.C. § 3301. Also in the even numbered years when Presidential Electors are nominated, the Convention delegates also select delegates and alternates to the Republican National Convention.

In odd numbered years, the State Convention is held for the purpose of electing for two-year terms the Chairman and members of the Republican State Committee.[10] Delaware law recognizes the State Chairman as the highest executive officer of the Republican Party and the State Committee as the State-wide governing authority of the Party. 15 Del.C. § 101.

At the State Conventions all nominations of candidates for National and State-wide offices are by roll-call vote of the delegates.[11] After each roll-call vote, if no candidate has received more than 50% of the delegate votes entitled to be cast, the roll-call is repeated until one candidate receives that majority. When it appears from the final polled vote that a candidate has received more than 50% of the eligible delegate votes and no other candidate has received at least 35% of the votes, the candidate receiving more than 50% of the votes is nominated and his name is certified to the State Election officials to be included on the ballot at the next general election. In any instance in which any other candidate received at least 35% of the votes cast on the final polled vote, the name of that person must also be certified to the State Election officials. 15 Del.C. §§ 3301, 3116. Persons receiving 35% of the votes cast on the final polled vote are entitled to enter into a State-wide Republican direct primary election to run against the majority candidate, provided such person gives timely notice to the State Election officials of his desire for such a direct primary. 15 Del.C. §§ 3116, 3107(a)(1).

8. Rules 2, 6 & 17, Ex. A to Docket Item 23.

9. Rule 3, Ex. A to Docket Item 23.

10. Rule 6, Ex. A to Docket Item 23.

11. Rule 20, Ex. A to Docket Item 23.

As previously noted, the Republican State Committee used the formula provided in its Rule 2 to allocate the 220 delegates among the four Convention Districts for the 1972 State nominating convention. This resulted in a delegate distribution as follows:

First Convention District — 42 delegates
Second Convention District — 91 delegates
Third Convention District — 42 delegates
Fourth Convention District — 45 delegates

The formula by which Delaware delegates and alternates to the Republican National Convention were allocated among the Convention Districts by the Republican State Committee, though not explicitly set forth by Rule, was in 1972, and has been historically, as follows: three delegates and three alternates from each of the four Convention Districts.

The Bureau of Census figures from the 1970 census for the State of Delaware shows the following total population of the four Convention Districts:

| Convention District | 1970 Population | Percent of Total |
|---|---|---|
| First (City of Wilmington) | 80,356 | 14.7 |
| Second (Rural New Castle County) | 305,470 | 55.7 |
| Third (Kent County) | 81,892 | 14.9 |
| Fourth (Sussex County) | 80,356 | 14.7 |

The Convention Districts had the following numbers of registered Republican voters immediately prior to the Presidential elections of 1968 and 1972:

| Convention District | Republican Registration | | Percent of Total | |
|---|---|---|---|---|
| | 1968 | 1972 | 1968 | 1972 |
| First | 11,524 | 9,373 | 13.06 | 9.16 |
| Second | 54,084 | 65,630 | 61.30 | 64.12 |
| Third | 8,929 | 11,638 | 10.12 | 11.37 |
| Fourth | 13,695 | 15,710 | 15.52 | 15.35 |

The Convention Districts had the following Republican vote in the Presidential elections of 1968 and 1972, measured by averaging the vote for the Republican Candidates for State Treasurer and State Auditor, as prescribed by Rule 2 of the State Committee:

| Convention District | Republican Vote | | Percent of Total | |
|---|---|---|---|---|
| | 1968 | 1972 | 1968 | 1972 |
| First | 13,658 | 10,365 | 12.47 | 9.45 |
| Second | 66,253 | 70,981 | 60.51 | 64.72 |
| Third | 12,626 | 12,551 | 11.53 | 11.44 |
| Fourth | 16,962 | 15,786 | 15.49 | 14.39 |

A comparison of the actual allocations of delegates to the State and National Conventions among the respective Convention Districts with the population, Republican registration, and Republican vote of each of the Convention Districts can be expressed in percentages as follows:

| | Percentages of Totals | | | | | | |
|---|---|---|---|---|---|---|---|
| | 1972 Delegates | | 1970 Population | Republican Vote | | Republican Voters | |
| Convention District | Nat. Conv. | State Conv. | | 1968 | 1972 | 1968 | 1972 |
| First | 25 | 19.1 | 14.7 | 12.5 | 9.5 | 13.1 | 9.2 |
| Second | 25 | 41.4 | 55.7 | 60.5 | 64.7 | 61.3 | 64.1 |
| Third | 25 | 19.1 | 14.9 | 11.5 | 11.4 | 10.1 | 11.4 |
| Fourth | 25 | 20.4 | 14.7 | 15.5 | 14.4 | 15.5 | 15.3 |

From this undisputed statistical summary, it is clear that approximately 54,000 registered Republican voters (1968 figures) in the Second District were entitled to elect 91 delegates to the 1972 Republican State Convention, or 1 delegate for each 594 Republicans. In contrast, 9,000 registered Republican voters (1968 figures) in the Third Convention District were entitled to elect 42 delegates, or 1 delegate for each approximately 214 Republicans. Thus, for example, the voting power of a Third Convention District registered Republican was nearly three times that of a Second District registered Republican in voting

for delegates to the 1972 State Convention.[12]

Similarly, with respect to delegates to the Republican National Convention, the Second District was allotted one delegate for approximately each 18,000 registered Republicans, while the Third Convention District was allotted one delegate for approximately each 3,000 Republicans with the result that the voting power of a Third Convention District registered Republican was approximately 5 times greater than a Second District registered Republican.[13]

These undisputed facts conclusively demonstrate that whether based on population, Republican voter strength in past Presidential elections, or registered Republican voters, the Second Convention District is seriously underrepresented in the nominating process of National and State-wide Republican candidates and in the selection process of Republican delegates to the National Convention.

The question becomes whether these significant disparities are constitutionally permissible.

First, it must be determined whether the Republican Party's delegate selection process for the State nominating convention is such "state action" as to invoke the equal protection clause of the Fourteenth Amendment. The Court concludes that it is.

The Republican Party in Delaware, like other political parties in the State, has a dual character—one aspect of which is essentially private while the other is generally public in nature. In its private capacity the party is usually regarded as a voluntary association of individuals who join together in furtherance of their political principles. Its normal responsibilities in this role relate generally to the management and conduct of its internal affairs, such as raising and spending funds in the interest of the party, winning new adherents, encouraging voter registration, recruiting and training active party workers, planning and conducting political campaigns and administering political patronage. Lynch v. Torquato, 343 F.2d 370 (C.A. 3, 1965). Traditionally, courts have been hesitant to interject themselves into those intra-party disputes involving essentially private functions of the management and conduct of the party's internal affairs, believing that such disputes which are highly "political" in character are best resolved through the deliberative processes of the party's governing bodies as provided by its own rules and regulations. O'Brien v. Brown, 409 U.S. 1, 92 S.Ct. 2718, 34 L. Ed.2d 1 (1972).

 In contrast, however, Delaware political parties, by tradition and statute, have become so inextricably intertwined in the State's election process by nominating party candidates for State-wide offices and Presidential Electors that their procedures in this regard may rationally be viewed as the "State" in action, with the consequence that the organization and regulation of such parties must be such as to accord electors equal protection of the laws as required by the Fourteenth Amendment.

In United States v. Classic, 313 U.S. 299, 316–317, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941) and Smith v. Allwright, 321 U.S. 649, 663–664, 64 S.Ct. 757, 88 L.Ed.

12. Using "the Republican vote (1968 figures)" as a yardstick instead of Republican registration, it can be seen that the voting power of a Third Convention District Republican was 2.42 times that of a Second District Republican:

$$\frac{\frac{66,253}{91}}{\frac{12,626}{42}} = \frac{728.0549}{300.6190} = 2.4218$$

13. Using "the Republican vote (1968 figures)" as a yardstick instead of Republican registration, it can be seen that the voting power of a Third Convention District Republican at the National Convention was 5.24 times that of a Second District Republican:

$$\frac{\frac{66,253}{3}}{\frac{12,626}{3}} = \frac{22,084.333}{4,208.666} = 5.2473$$

987 (1944), the Supreme Court held that direct political primaries are integral parts of state elections and thus subject to the same constitutional standards as final general elections. Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) extended this protection to a private caucus which nominated the person who always received the party's support in the primary. The operative theory in *Allwright* and *Terry* was that a party or "club", which exercised the nominating power, acts in a public capacity and performs a "public function".

■ Delaware, instead of prescribing a direct primary for nominating candidates for National and State-wide offices, has simply authorized the utilization of party nomination conventions as a substitute method of making nominations. Since the functions performed by the selection procedure—the nomination of candidates—is the same as that performed by a direct primary, which is governed by the Fourteenth Amendment, it logically and rationally follows that the party convention nominating process is "state action" and the Court so concludes.

■ It cannot seriously be doubted from the pervasive statutory scheme referred to above that the political convention nominating system practiced in Delaware is an integral and critical phase of the State's over-all election process. In Gray v. Sanders, 372 U.S. 368, 83 S. Ct. 801, 9 L.Ed.2d 821 (1963), the Supreme Court required that once a direct primary election is undertaken to determine voter preferences, each vote in that election process must be given equal weight. In *Gray*, the Court invalidated the Georgia County unit system employed in direct primary elections for state office on the basis that it failed to conform to the one man, one vote standard. While the Supreme Court in *Gray*, supra at 378 n. 10, 83 S.Ct. 801, specifically reserved the question whether the one man, one vote principle was applicable to nominating conventions, it would reasonably appear to be equally controlling to the selection of delegates to such conventions, otherwise the *Gray* principle could simply be evaded by substituting a weighted-voting convention in place of a direct primary system. This Court cannot conceive that the Supreme Court envisioned so simple a tactic to evade such an important constitutional principle. This Court therefore holds that the one man, one vote principle applies to the selection of delegates to the Republican State nominating convention because that process is an integral part in the State's scheme of public elections. Seergy v. Kings County Republican County Committee, 459 F.2d 308 (C.A.2, 1972); Doty v. Montana State Democratic Control Committee, 333 F.Supp. 49 (D.Mont. 1971); Maxey v. Washington State Democratic Committee, 319 F. Supp. 673 (W.D.Wash. 1970); Wagner v. Gray, 74 So.2d 89, 91 (Fla. 1954).

■ The Court also holds that the present and traditional practice of the State Committee to allot an equal number of delegates to the Republican National Convention to each of the existing four Convention Districts, whose population and registered Republican voter strength are so disproportionate, amounts to invidious discrimination rendering such practice unconstitutional. On the other hand, once the State Convention delegates are elected on a one man, one vote principle, it would be constitutionally permissible for the State Convention delegates voting as a whole to select all the Republican National Convention delegates so long as this was done without the present requirement of the State Committee that they come from a particular Convention District. This is so because the National Convention delegates who represent Republicans from the entire State would be representatively selected by the State Convention delegation who had been chosen under the one man, one vote principle. See Irish v. Democratic-Farmer-Labor Party, 399 F.2d 119, 120 (C.A.8, 1968); Smith v. State Executive Committee, 288 F.Supp. 371, 376–377 (N.D.Ga. 1968).

■ The next question to arise is when does the election process begin. The process begins in Delaware at least when the Republican State Committee allocates the number of State Convention delegates to be elected by popular vote from the various Convention Districts as prescribed by the extensive statutory scheme in 15 Del.C. Chapter 31. It is at this point that the one man, one vote principle comes into play to require that the allocation be made to the Convention Districts on some rational basis —either total population, total registered Republican voters, or total Republican votes cast in the last Presidential election.

It also follows that equal voter participation requires the Republican District Committees to apportion its allotted State Convention delegates within each Convention District among Representative Districts [14] (unless they are to be elected at large from the Convention District) on the same rational basis required of the State Committee.

The defendants have advanced numerous reasons why the Court should withhold the relief sought by the plaintiffs.

■ First, the defendants contend that the action is not ripe for judicial determination since the plaintiffs have not sought relief from the State Convention. However, the record before the Court indicates that an effort was made prior to and at the recent annual Convention held on May 18, 1973 (after this suit was filed) to persuade the Convention to change the apportionment of delegates among the Convention Districts.[15] This effort was significantly unsuccessful. The Rules Committee of the Convention voted 8 to 3 to recommend no change to the present delegate apportionment formula and indeed moved that their recommendation be adopted by the 1973 Convention. The Convention accepted the recommendation with 87 out of 91 delegates from the Second Convention District voting against the motion. Thus, the controversy continues and there is no reason to assume that the State Committee or a specially called convention will alter the present delegate apportionment formula to bring it into line with the one man, one vote principle before the 1974 Convention absent judicial action. As long as the Delaware Republican Party maintains the present allocation system which has existed since December 1964, the problem is therefore capable of repetition, yet evading review. The need for its resolution thus reflects a continuing controversy of constitutional proportions which directly affects the plaintiffs and gives them standing to sue. See Moore v. Ogilvie, 394 U.S. 814, 816, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969).

■ Second, the defendants claim that the issues in this case are "political" and thus not justiciable. The Court has already decided that the Delaware Republican Party, one of the two principal parties [16] in the State, by virtue of the statutory authority vested in it by the General Assembly, is inextricably involved in the candidate nominating process, an integral part of the State's elec-

---

14. It would appear that the allocation of delegates within each Convention District, established or to be established, should be distributed on the basis of the one man, one vote principle among its Representative Districts for at least two reasons: first, because 15 Del.C. § 101 requires state convention delegates to be elected from each Representative District, provided a registered party member is available in each such District; and second, it would make for ease of voting since the Department of Elections which conducts primary elections uses election districts within each Representative District for establishing primary election districts. 15 Del.C. § 3109.

15. Docket Item 23.

16. 15 Del.C. § 101 defines "Principal Political Parties" as the two political parties which have the highest total voter registration in the State. In Delaware these are the Republican and Democratic Parties which on November 1972 had 102,351 and 120,770 registered voters respectively. Burton D. Willis, Election Commissioner's Report, p. 15, dated Jan. 1, 1973.

tion system. In that specific regard, the Party has become "public" and its actions are "state actions" governed by the Fourteenth Amendment which this Court is bound to enforce. This Court is not concerned with and will not interject itself into the Party's purely private role in managing and conducting its internal political affairs heretofore discussed. The Court finds no merit to defendants' non-justiciable argument.

■ Third, the defendants contend that the obvious malapportionment of delegates to the State and National Conventions is justified on other rational grounds. They argue that the Republican Party has the need to build and maintain a strong organization throughout every section of the State, to encourage the acceptance of diverse attitudes and opinions, and to maintain its representative character based on a wide range of socio-economic and ethnic factors peculiar to local political subdivisions. Thus, they say, to require the allocation of delegates on a one man, one vote principle will result in the absolute domination and control of every Convention by the delegates elected from the Second Convention District and that this in turn will cause a withering away of the support and interest in the less populous Convention Districts. Admittedly, the Republican Party has a vital interest in all these needs but they must be served in other ways than by giving the votes of party members in the less populated areas much greater weight than the votes of those members from the more populous areas. There are other legitimate means which come to mind as methods for avoiding absolute control in one Convention District, such as creating additional Convention Districts of equal voting weight and eliminating block voting by Convention Districts. The Court is certain that other constitutional means will be developed by the Party and its leaders for promoting a strong State-wide organization. Nevertheless, none of the "rational interests" advanced can overcome the unconstitutional discrepancies in relative voting

strength among *individual* voters. If so, those rationales would have been equally applicable to justify Georgia County's unit system which was struck down by the Supreme Court in Gray v. Sanders, *supra.* There the Court answered such rational interest arguments by holding there could be no compromise with the one man, one vote principle. Thus, that principle applies here except perhaps to the extent there might be an articulated rational policy that would permit some slight deviation from an absolute equal allocation of delegates. See Mahan v. Howell, 410 U.S. 315, 93 S.Ct. 979, 35 L.Ed.2d 320 (1973). But there is no doubt, even under *Mahan*, that the present allocation formula is so disproportionate that it cannot stand.

■ In this connection the defendants have advanced the superficially enticing argument that the present delegate allocation system of the Republican State Convention is constitutional because the Second Convention District has more than 35% of the convention delegates, and thus under 15 Del.C. §§ 3116 and 3301, has the power to force any convention nomination contest into a direct, two-candidate primary election. This argument boils down to the contention that, so long as the Second District *as a block* has at least 35% of the delegate votes and thus has the voting capability *as a block* to force a direct one man, one vote primary, this Court need not concern itself with the weighted voting in the convention itself. This argument is fallacious.

In the first place, it wholly ignores the unconstitutional discrepancies in relative voting strength among *individual* Republican voters. The relief sought by plaintiffs has nothing to do with the Convention Districts *per se.* Secondly, the challenged wrong complained of by plaintiffs is not cured by a device which forces those individual voters with less voting power to each forego his right to vote as he chooses and to vote together with other like-minded Republicans *as a block* just for the right to have an equal voting voice. This is the effect of the

present system. Those now complaining in this suit are forced into a choice of living with a weighted vote or block-voting to force a direct two-man primary; whereas all Republicans in the other three Convention Districts have a vote of greater value from the beginning and need not resort to a primary under § 3116 just to obtain an equal vote. This discrimination in powers and rights in and of itself denies equal protection of the laws.

Fourth, the defendants' suggestion that this case should be heard by a three-judge district court is without merit. In the present case, the plaintiffs simply challenge the constitutionality of the delegate apportionment formula utilized by the Republican State Committee, under color of state law. The immediate source of this unconstitutional result is Rule 2 of the State Committee, not any statute of the State of Delaware. Thus, a three-judge court is not only not required but would be improper in the present case. Ex Parte Bransford, 310 U.S. 354, 361, 60 S.Ct. 947, 84 L.Ed. 1249 (1940); United States v. Christian Echoes Ministry, 404 U.S. 561, 565, n. 4, 92 S.Ct. 663, 30 L.Ed.2d 716 (1972).

Finally, the defendants contend that all the delegates elected to the 1972 Republican State Convention must be joined as indispensable party defendants. The Court rejects this contention. Plaintiffs seek prospective relief such that the allocation of delegates to the 1974 State Convention will be made on a one man, one vote principle. While it is possible that the 1972 delegates might be called to a special convention prior to 1974 to perform some nominating function, it is highly unlikely, but if they are, the plaintiffs simply request that their votes at such special nominating convention be weighed in accordance with the one man, one vote principle. Plaintiffs do not seek the removal of the 1972 delegates and thus they are not deemed to be indispensable to this action.

Furthermore, the State Chairman, the highest executive officer of the party, and the State Committee, the State-wide "governing authority" of the party, recognized by the State in 15 Del.C. § 101, clearly has the delegate allocating function for the 1974 Convention and this Court can restrain it, a party before this Court, from exercising that function in a manner inconsistent with the one man, one vote principle.

This brings the Court to the point of framing appropriate relief. Since the relief sought is prospective for the 1974 State Convention, the Court finds no need to detail the appropriate delegate apportionment formula to ensure compliance with the one man, one vote principle or to determine now whether the apportionment should be based on total population, total registered Republican voters, or total Republican vote in the 1972 Presidential election.[17] All of these matters should be decided in the first instance by the State Committee which is in a much better position to do so than the Court.

The Court does find and declare, however, that the State Convention delegate allocation formula set forth in Rule 2 of the Republican State Committee violates plaintiffs' rights under the equal protection clause of the Fourteenth Amendment and the use of that formula in the future will be permanently enjoined. The State Committee will also be required to adopt a new formula which will comply with the one man, one vote principle for the election of State Convention delegates and to adopt a new rule that will require the District Committees, established or to be established, to apportion their allocated delegates among their respective Representative Districts (unless they are to be elected at large from the Convention District) on the same rational basis as required by the State Committee. The Court will

17. Any of these would appear to meet constitutional standards. Maxey v. Washington State Democratic Committee, *supra.*

also permanently enjoin the present and traditional practice of the State Committee of allotting Republican National Convention delegates equally to each of the four existing Convention Districts.

The above shall constitute the findings of fact and the conclusions of law required by Rule 52(a), F.R.Civ.P.

Submit order in accordance with this opinion promptly.