THE STATE OF DELAWARE, upon the relation of Harry M. Willis, *v.* JOHN KEENAN, CHARLES E. ANDERSON, JOHN H. WIGGLESWORTH, DELAWARE S. WRIGHT, CLAUDE M. LESTER, PHILLIP E. SIMMONS, JR., WALTER LEE, Members of the Levy Court of New Castle County, and HARRY W. WINNINGER, Comptroller of New Castle County.

(*October* 15, 1935.)

HARRINGTON and RICHARDS, J. J., sitting.

*John B. Jester* for Relator.

*Frank L. Speakman* and *Harry Lunger* for Respondents.

Superior Court for New Castle County, No. 139, March Term, 1934.

HARRINGTON, J., delivering the opinion of the Court:

The relator, Harry M. Willis, served as a judge at a primary election held in New Castle County on October 7th, 1933. That election was held for the purpose of nominating candidates for the offices of Representative in the General Assembly of the State of Delaware, from the third and fifth Representative Districts in that County, to be voted for at a special election duly called by the Governor, and held on October 17th, 1933. This special election was held to fill vacancies in the House of Representatives, caused by the resignation of Leroy F. Hawke and Walter G. Tatnall, members of that body from the third and fifth Representative Districts, respectively, in New Castle County.

The petition of the relator, filed on behalf of himself and other persons, to whom various expenses incurred in holding such special election are claimed to be due, among other things alleges:

1. That on or about September 1st, 1933 the General Assembly having theretofore adjourned without day, the Honorable C. Douglass Buck, Governor of the State of Delaware, issued a proclamation, directing that body to convene in special session on the Eighteenth day of October, 1933.

2. That Leroy F. Hawke and Walter G. Tatnall, duly elected members of the House of Representatives from the third and fifth Representative Districts in New Castle County, respectively, had previously resigned from that body.

3. That because of these vacancies, and in order to fill them, pursuant to the provisions of section 1816 of the Code of 1915, as amended, the Governor, on September 16th, 1933, issued a writ to the sheriff of New Castle County directing him to hold a special election in the third and fifth Representative Districts in that County on October 17th, 1933, and the necessary steps to that end were duly taken by the sheriff.

4. That on September 19th, 1933 Josiah Marvel, Jr., chairman and presiding officer of the Democratic Executive Committee for New Castle County, requested the Board of Elections of that County to designate October 7th, 1933 as the date for holding a primary election in the districts in question, to nominate candidates for the House of Representatives, to be voted for at the special election to be held on October 17th, 1933, to fill the vacancies caused by the resignation of Mr. Hawke and Mr. Tatnall.

5. That on September 25th, 1933 this request of Mr. Marvel, as chairman and presiding officer of the Democratic Executive Committee for New Castle County, was complied with by the Board of Elections, and he was so notified.

6. That on September 26th, 1933 a certificate was filed with the Clerk of the Peace for New Castle County, which stated that Paul Leahy and William M. Duffy had been nominated as candidates for the offices of representative in the General Assembly from the third and fifth Representative Districts in New Castle County respectively, by a convention held on that date by the Democratic Party of New Castle County; and this certificate was signed by Josiah Marvel, Jr., Chairman and presiding officer of that convention, and by Harry Smith, secretary.

7. That on October 6th, 1933 both the said Paul Leahy and William M. Duffy, by written notice duly

acknowledged, notified the Clerk of the Peace for New Castle County that they would not accept the nominations of the Democratic Party for New Castle County for the offices above mentioned.

8. That the Board of Elections delivered the books of qualified voters and the ballot boxes to the inspector in each voting precinct in the third and fifth Representative Districts of New Castle County, as directed by law, and on October 7th, 1933, the date fixed by that board, primary elections for the purpose of nominating candidates for the offices of Representative in the General Assembly from those districts, were duly held.

9. That on October 9th, 1933 the names of the successful nominees at this primary election were duly certified to the Clerk of the Peace for New Castle County by a certificate signed by the chairman, and, also, by the secretary of the Democratic Executive Committee for that County.

10. That bills, covering the reasonable and proper expenses of holding such primary election, including the compensation due the judges, clerks and inspectors, and the stationery used at such election, were duly presented to the Levy Court of New Castle County and to the Comptroller of that County, but payment of such bills was wrongfully and improperly refused.

The special election referred to in the petition was called by the Governor, pursuant to *Section* 1816 of the *Code* of 1915. That section provides:

"Whenever there shall be such vacancy in either House [by failure to elect, ineligibility, death, resignation, or otherwise], and the General Assembly is not in session, the Governor shall have power to issue a writ of election to fill such vacancy."

Other statutory provisions in the *Code of* 1915 are, also, pertinent.

*Section* 1678 defines a primary election. It provides that such an election, within the meaning of this chapter (*Chapter* 58) "is an assemblage of voters who are members of any political party, organization or association, duly convened for the purpose of nominating a candidate or candidates for public office, or for the purpose of selecting delegates or representatives to any political convention thereafter to be held for the purpose of selecting candidates as aforesaid."

*Section* 1721 defines a political party within the meaning of chapter 60 of that Code. It "shall be an organization of bona fide citizens and voters of any County in this State, which shall by means of a convention, primary election or otherwise, nominate candidates for public offices to be filled by the people at any general or special election within the State."

There are other provisions in both of these sections relating to the size of such organization and the number of voters represented by it and cast at the last preceding general election, but these provisions are not important in this case.

*Section* 1679. "All primary elections to be held by any political party, organization or association, for the purpose of nominating or selecting candidates to be voted for at any subsequent election, or for the purpose of selecting delegates or representatives to any political convention to be held for the purpose of selecting candidates as aforesaid shall be by ballot."

*Section* 1680. "Every primary election to be held by any political party, organization or association for the

purpose of nominating or selecting candidates by ballot to be voted for at any subsequent election   *  *  *   shall be held by a Board of Election officers consisting of one inspector, who shall be a judge and the presiding officer, and two other judges at each voting precinct."

*Section* 1683. "Each of the said judges, after being duly qualified, shall choose one clerk of the primary election to be held."

The important section is *Section* 1709, as amended by *Chapter* 66, *Volume* 27, and by *Chapter* 102, *Volume* 30, *Laws of Delaware.* That section provides:

"The compensation of the officers and clerks for holding Primary Elections under the provisions of this Chapter [*Chapter* 58] shall be five dollars for each Judge, Clerk and Inspector at each Primary Election so held. The expenses for holding primary elections under the provisions of this Chapter, including stationery, pay of officers and clerks, shall be paid by the Levy Court of the county wherein such primary election is held to nominate persons to be voted for at a subsequent general election, and by The Mayor and Council of Wilmington in any year when a primary election is held in the City of Wilmington to nominate officers to be voted for at the subsequent municipal election in the said City."

*Section* 1713. "The ballots used at any primary election shall be printed by the regularly organized and constituted County Committee or governing authority of the political party, organization or association holding such primary election."

*Section* 1714. "The provisions of this Chapter [*Chapter* 58] shall not apply to any primary election held for the election of delegates to any State convention called for the purpose of electing delegates or representatives to any national or State political convention; provided, however, that the regularly organized County Committee or governing authority of the national or State political party, organization or association by or for which the primary

election is held for the election of delegates to any State convention held for the election of delegates to any national or State political convention, shall bear the expense of conducting such primary election as set forth in this Section; provided, further, that the said governing authority ordering or issuing the call for a primary election to elect delegates or representatives to any County or City convention, shall bear all the expense incurred by reason of such election."

*Sections* 1681, 1693, 1698 and 1717 also provide penalties for the refusal of inspectors or judges to serve at such primary elections, and for the refusal of the proper officers to deliver the voting books of qualified voters for. primary elections to such officers.

As provided in *Section* 1678, a primary election may be held "for the purpose of nominating a candidate or candidates for public office, or. for the purpose of selecting delegates or representatives to any political convention thereafter to be held for the purpose of selecting candidates as aforesaid."

See, also, *Sections* 1679 and 1680 where the words "to be voted for at any subsequent election" are used in connection with the words "primary election" or "elections."

*Section* 1819, also, provides for the issuance by the Sheriff of "a proclamation reciting the said writ and appointing a day for holding a special election pursuant thereto," and *Section* 1822 provides what officers shall be necessary to hold such election.

As we have already seen, *Section* 1709 provides that "The expenses for holding primary elections under the provisions of this Chapter [*Chapter* 58], including sta-

tionery, pay of officers and clerks, shall be paid by the Levy Court of the county wherein such primary election is held."

The respondents point out, however, that this section then adds, and in the same sentence, the limiting words "to nominate persons to be voted for at a subsequent general election." They, therefore, contend that, though by express statutory provisions, a primary election may be held to nominate candidates for public office to be voted for at any "subsequent election," whether general or special, that the Levy Court of the County is only required to pay the expenses of such primary election when it is held to nominate a candidate or candidates to be voted for at a subsequent general election.

The relator, on the other hand, not only contends that it is apparent from the statutory provisions above referred to that a primary election is of a public nature, but, also, contends that from their provisions there is no real and substantial difference between a general and a special election; and that a special election, for all practical purposes, is a general election in the particular district in which it is held.

That such primary elections are of a public nature is apparent from these statutes, but our attention has not been called to any provision making the nomination of candidates for public office by that method mandatory (see *Sections* 1679, 1680, 1711, 1721 and 1722 of the *Code of 1915*) ; and even if there were such a provision, that would not necessarily answer the question before us.

True, *Section* 1714 expressly provides that the regularly organized County Committee, or governing authority, shall pay the expenses, "as set forth in this Section," of

holding a primary for the election of delegates to any State or national political convention. With the exception of *Section* 1709, the only other express limitation on the payment by the Levy Court of the expenses of holding a primary election is in relation to the printing of ballots in *Section* 1713.

In support of his contention that the Levy Court should pay the expenses of holding the primary election in question, the relator points out that *Section* 1823 provides that: "Every such special election in the Representative or Senatorial District, to fill the vacancy in which the special election is to be held, shall be provided for, opened, held, conducted and closed, and the result thereof ascertained and certified in the same manner, at the same places, and subject to the same laws, so far as the same may be applicable, as are prescribed for the General Election."

In most cases, the intent of a legislative act must be ascertained from the language used in it. There may be cases where the apparent meaning of a particular section may be affected by other language in the act, when it is read as a whole, but there is nothing in either *Section* 1823, or in any other statutory provision, relating to the subject, that can in any way broaden or change the meaning of *Section* 1709.

By reason of the statutes above quoted, it is apparent that primary elections may be held to nominate candidates to be voted for, either at special elections, or at general elections, held at specified recurring times; but the payment by the Levy Court of the costs of holding such an election can only be compelled by statute.

Whatever the reason for this distinction may have been, *Section* 1709 merely provides for the payment of such costs

where the primary is held to nominate candidates to be voted for at a subsequent general election.

Other contentions were made by the respondents in support of their motion to dismiss the relator's petition, but they need not be considered by us.

For the reason above given, the petition is dismissed.