502 F.2d 1123
 B. Wilson REDFEARN et al., Individually and on behalf of all
others similarly situated
v.
DELAWARE REPUBLICAN STATE COMMITTEE, and Chairman Herman C.
Brown, Defendants, Basil R. Battaglia et al., Intervening
Defendants, James H. Baxter, Jr., etal., Intervening
Defendants, Charles G. Lamb et al., Individually and
asofficers of theKent County Republican Committee,
Intervening Defendants, Delaware RepublicanState Committee
and Herman C. Brown, Chairman, Defendants, Basil R.
Battagliaet al., Intervening Defendants, Appellants.
 No. 73-1916.
 United States Court of Appeals, Third Circuit.
 Argued March 14, 1974.
Decided July 29, 1974.
 
 William O. LaMotte, III, Thomas Reed Hunt, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for appellees.
 Victor F. Battaglia, Gary W. Aber, Biggs & Battaglia, Wilmington, Del., for appellant Basil R. Battaglia.
 A. Richard Barros, Brown, Shiels & Barros, Dover, Del., for appellants Charles G. Lamb, Evelyn H. Greenwood, Allen Hedgecock, Allen Haas, Andrea L. Barros and John David.
 William Swain Lee, Betts & Lee, Georgetown, Del., for appellants Delaware Republican State Committee and Herman C. Brown, Chairman.
 Howard T. Ennis, Jr., Georgetown, Del., for appellants James H. Baxter, Jr., George A. Bramhall, Florence E. Craemer, Harvey H. Lawson and William D. Stevenson, Sr.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge.
 
 
 1
 This appeal involves, but unfortunately does not resolve, the conflict between two constitutionally protected interests; the right of freedom of association for the achievement of desired political ends-- protected by the first amendment-- and the right to have one's vote in an election for public office given equal weight with that of other voters-- protected by the equal protection clause of the fourteenth amendment. The order appealed from, an injunction issued by a single district judge on a motion for summary judgment, adjudged that certain internal rules of the Republican State Committee of Delaware for the allocation of delegate seats in that party's state convention violated the equal protection clause of the fourteenth amendment and directed the party to adopt new internal rules consistent with that clause. Although the order appealed from was in form an injunction against the operation of the party's internal rules, those rules implicated state action only by virtue of 15 Del.C. 101, 3301(c) and 3116, and the injunction is against those statutes as applied to the Republican State Committee. We conclude (1) that the injunction issued was improvidently granted, (2) that any proper injunction may by virtue of 28 U.S.C. 2281 be beyond the power of a single district judge, and (3) that the case should not have gone forward without giving notice to the governor and attorney general of Delaware as required by 28 U.S.C. 2284(2). The three-judge court issue is so closely interrelated with the merits of the conflicting constitutional claims that a discussion of those claims is required.
 
 I. THE COMPLAINT AND MOTION
 
 2
 The plaintiffs are four registered Republican voters residing in the Second Convention District, suburban New Castle County, who seek, for themselves and other Republican voters similarly situated, relief pursuant to 42 U.S.C. 1983, and Rule 23(a) and (b) Fed.R.Civ.Proc., for the claimed dilution of their equal voting rights in the Republican party primary election for nominees for statewide office. The prayer for relief is for:
 
 
 3
 '(1) A declaration that 15 Del.C. Sections 101 and 3301(c), as construed and applied by the State Republican Party and in accordance with its custom and usage, are unconstitutional. (2) A temporary and permanent injunction prohibiting defendants from allocating among the four state Republican convention districts delegates to Republican State Conventions and Republican National Conventions in any manner other than one which results in each such delegate representing an equal number of registered Republican voters. (3) An affirmative Order directing the defendants henceforth to allocate delegates to Republican State Conventions and Republican National Conventions in a manner consistent with the principle of 'one-man-one vote', such that each delegate to such conventions represents and equal number of registered Republican voters; and, further, that all further voting by delegates elected to the 1972 Republican State Convention be weighted in such a way as to reflect the number of registered Republican voters represented by the delegate casting the vote. (4) Such other and further relief as may be necessary, just, and proper.'
 
 
 4
 The undisputed facts alleged in the conplaint and confirmed by affidavits filed in support of the motion for summary judgment, are set forth fully in the opinion of the district court.[1] The Republican Party of Delaware under its rules is organized into four convention district: The City of Wilmington; New Castle County outside Wilmington (where the plaintiffs reside); Kent County; and Sussex County. Each convention district is allotted 30 delegates. An additional 100 delegates are allotted to districts on the basis of one delegate for each 1% Of the statewide Republican vote which was cast by voters in that district during the last Presidential election. There is no question that this formula provides disproportionate convention delegate strength for districts other than suburban New Castle County which has the largest Republican registration.
 
 
 5
 II. THE STATUTORY ARRANGEMENTS FOR PRIMARIES
 
 
 6
 Delaware, like the other 49 states,[2] has for many years provided for publicly financed primary elections for the nomination of candidates at the general election running with party designations. Prior to 1969 the State by statute defined 'Party' as simply 'any political party, organization or association.' It defined 'Primary election' as
 
 
 7
 'an assemblage of voters who are members of any political party, as defined in this section, duly convened for the purpose of nominating a candidate or candidates for public office, or for the purpose of selecting delegates or representatives to any political convention thereafter to be held for the purpose of selecting candidates, which at the last general election before the primary election polled at least 10% Of the entire vote of this State, or any division or sub-division thereof, for which nominations were made.' 15 Del.C. 3101 (amended by 57 Del.Laws ch. 181 1).
 
 
 8
 Any such party simply notified the Department of Elections of its desire to hold a primary election. 15 Del.C. 3108. Prior to 1969 the method of becoming a party candidate was both simple, and from the point of view of state involvement, neutral.
 
 
 9
 'Any person desiring to be voted for as a candidate for nomination at any primary election shall notify the County Committee of which he is a member, in writing at least 15 days before such primary election is held.' 15 De.C. 3107 (amended by 57 Del.Laws ch. 241 5; 57 Del.Laws ch. 567 18C).
 
 
 10
 At one time the political party caused ballots to be printed which included the names of all self-designated candidates. See 15 Del.C. 3124 (amended by 49 Del.Laws ch. 276 3). Since 1953, however, the Department of Elections has prepared the ballots. But because prior to 1969 mere notice of intention to become a candidate sufficed for a candidate to obtain a place on the primary ballot, the internal party organization had no legal though perhaps a significant practical effect on the ultimate party nominee. Thus prior to 1969 there was no legally significant tension between a Delaware political party's right to determine its own makeup and the one man one vote principle. In 1969, however, the legislature (one may presume at the invitation of the major parties) intruded into the internal affairs of political parties in a significant way by amending 15 Del.C. 3107 with respect to the manner of becoming a primary election candidate for statewide office, and by the addition of 15 Del.C. 3116 and 3301(c) imposing new legal obligations on political parties. Section 3301(c) provides that no candidate for the office of Elector of President and Vice President, United States Senator, Representative in Congress or State Officer elected statewide may be deemed nominated for the general election unless he has either received more than 50% Of the eligible delegate vote at a party nominating convention or has received a majority of the votes cast in a party primary election. The section provides further:
 
 
 11
 'No such state nominating convention shall have completed its business relative to such nominations until such time as 1 nominee for each of the aforesaid offices shall have received a vote greater than 50% Of the total number of eligible delegate votes at such convention, which polled vote shall be considered final.'
 
 
 12
 There is no way to get on the general election ballot as a candidate for statewide office other than by a convention nomination or a primary election. By virtue of 15 Del.C. 3116, a primary election will be held only after one candidate at a party nominating convention receives 50% Of the total number of eligible delegate votes, and only if one other candidate in the final polled vote at the convention receives at least 35% Of the eligible delegate votes cast. The effect of these provisions is to restrict access to the general election ballot to be more than two candidates from each political party which is large enough to be eligible to hold a primary election. Candidates of minor parties-- since 1969 those which polled less than 5% Of the entire vote cast in any county at the last general election-- can get on the general election ballot by achieving a delegate vote of over 50% At a party convention. The political reality, however, is that governmental power will be achieved through the general election process only by those parties with a following sufficient to be eligible for a primary election. Thus the alternative of nomination by a minor party convention does not significantly increase the voting power of voters in suburban New Castle County at the general election. Nor does that alternative effect the plaintiffs' voting power with respect to choice of a nominee who will bear the Republican party label.
 
 III. THE EFFECT OF THE DISTRICT COURT ORDER
 
 13
 The district court ruling that the Republican State Convention is in the foregoing statutory context 'state action' within the meaning of the fourteenth amendment and 42 U.S.C. 1983 is obviously correct. See Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963). But the court's decision to let stand the challenged statutes but hold invalid the internal party rules raises quite serious first amendment issues. The court's order that the one man one vote rule be complied with by the nominating convention of the Republican Party of Delaware can be accomplished in only two ways. Either the convention delegates must all be elected at large, or if the party concludes it should continue to have convention districts, the districts must have delegate strength in proportion to party membership in each district. Many believe that party success in achieving statewide or national political power is intimately related to success in achieving such power in the local substructures of government. Thus the ability of any party in Delaware to organize itself on a district rather than an at large basis may be, or is believed to be, significantly related to its pursuit of the power to impose its policies upon government. The freedom to associate for such a pursuit is the heart of the right of association guaranteed by the first amendment. See Bates v. Little Rock, 361 U.S. 516, 523, 80 S.Ct. 412, 4 L.Ed.2d 480 (1959); N.A.A.C.P. v. Alabama, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); cf. N.A.A.C.P. v. Button, 371 U.S. 415, 429, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). If a given party chooses to organize by districts, but to allocate delegate strength to a district in which it has fewer numbers but a greater opportunity to achieve the practical advancement of the political ideas for the pursuit of which the association was formed, state action which frustrates that choice is highly suspect. Yet the effect of the district court's ruling is that the Delaware statutes under attack have been construed to prohibit that choice. The statute under which the state intrudes its action into the party continues to operate, but at the expense of the freedom of association of the party.
 
 IV. AVAILABLE ALTERNATIVES
 
 14
 There are obvious alternatives to the sacrifice of the party's associational rights. The State could be required to withdraw from its intrusion into the party organization and to return to its former neutral means or devise other neutral means for getting on the ballot for statewide general elections. That would require at least declaratory relief against the continued operation of 15 Del.C. 3301(c) and 3116. Since the court never weighed this alternative, but instead simply enforced the State's decision at the expense of the associational rights of the Republican Party, we reverse and remand for reconsideration.
 
 
 15
 It should be clearly understood that our reversal and remand does not determine that the alternative of holding the State primary election statutes unconstitutional must be chosen over that of enjoining the party convention delegate allocation. We reverse and remand because the district court, in deciding that the party rules rather than the state statutes must yield, did not weigh the highly relevant associational rights of the Party. We are aware that the 1969 amendment to the Delaware primary election law probably was aimed at preserving the integrity of the state electoral process by the prevention of practices such as raiding of an opposition party primary to produce a weak opponent. The Supreme Court has held that this is a valid public policy. See Rosario v. Rockefeller, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1972). It can, however, be achieved by means other than those chosen by Delaware. Such alternative means, and their possible effect on the Republican Party's associational rights and on the operation of the one man one vote rule in the general election, must be weighed before the court can consider an injunction by which it intrudes into the internal affairs of a political party. See Lynch v. Torquato, 343 F.2d 370 (3d Cir. 1965).
 
 V. THE THREE-JUDGE COURT ISSUE
 
 16
 The district court rejected the defendants' suggestion that the case required the convening of a three-judge court. 362 F.Supp. at 74. Possibly if no more were truly at issue than the validity of the Republican Party rules and injunctive relief against the party officers, it could be said that although party action was 'state action' within the meaning of the fourteenth amendment and 42 U.S.C. 1983, the party officers were not 'state officers' within the meaning of 28 U.S.C. 2281. See Judge Mansfield's suggestion of that possibility in Seergy v. Kings County Republican County Committee, 459 F.2d 308, 312 n. 6 (2d Cir. 1972). It seems unlikely, however, that the Supreme Court, construing 2281 even as narrowly as it does, would permit the frustration of the Congressional policy behind that section by the device of an injunction which effectively dismantles a state statute by nominally enjoining others than state employees. There is also the problem that the Delaware statutes virtually make the party convention a state agency and its rules state administrative rules. As Seergy v. Kings County Republican County Committee, supra, states, there is no question but that statutes dealing with party primaries are of statewide application. 459 F.2d at 312 n. 5. In any event, if on remand the plaintiffs continue to press their demand for injunctive as well as declaratory relief, the district court should request the convening of a three-judge court since we have held that injunctive relief going beyond the party rules and involving the legitimacy of the State's intrusion must be considered. Since the complaint seeks injunctive relief against 'the enforcement, operation or execution of State statutes or state administrative orders' notice of the hearing on remand should be given to the governor and attorney general. If the plaintiffs withdraw their request for injunctive relief the case may proceed before a single judge.
 
 
 17
 The order appealed from will be reversed and the case remanded to the district court for further proceedings consistent with this opinion.
 
 
 18
 ALDISERT, Circuit Judge (concurring).
 
 
 19
 Although I find the nagging single-judge-statutory court issue most troublesome and not free from doubt, as long as plaintiffs insist on injunctive relief, I am persuaded that a three-judge court is necessary. This case presents a collision between countervailing principles: (1) an allegation of unconstitutional application of an otherwise constitutional statute for which a three-judge court is not necessary, see, Spencer v. Kugler, 454 F.2d 839, 844 (3d Cir. 1972), and (2) a challenge to a statewide rule of a political party so inexorably intertwined with the state's election process that it must be considered a challenged administrative regulation of statewide operation, thus necessitating a three-judge court if an action is sought to enjoin its use. Board of Regents v. New Left Education Project, 404 U.S. 541, 542, 92 S.Ct. 652, 30 L.Ed.2d 697 (1972).
 
 
 20
 In Redfearn v. Delaware Republican State Committee, 362 F.Supp. 65, 67 (D.Del.1973), we learn:
 
 
 21
 The Delaware Republican Party is, as defined by 15 Del.C. 101, a 'political party, organization or association which elects delegates to a National Convention, nominates candidates for electors of President and Vice-President, United States Senator, Representative in Congress, Governor, and other offices, and elects a State Committee and officers of a State Committee by a State Convention composed of elected members from each Representative District, provided a registered party member is available in each Representative District.'
 
 
 22
 In large measure Rule 2 of the Republican Party controls the selection of delegates in an annual state convention composed of 220 delegates. Any person desiring to stand for election as a delegate must comply with the provisions of 15 Del.C. 3107(a)(2)(ii). Other Delaware statutes control the day of the primary election, state payment for the primary election, and as Judge Latchum summarizes: 'In all other respects the voting procedure of the Republican primary election is conducted according to the State's general election laws.' 362 F.Supp. at 68.
 
 
 23
 This Republican Party rule governs the composition of the convention which in turn determines whether one's name may go on the Delaware ballot as a candidate in the primary. All of this relates to statewide operation and, except by name and form, it has all force and efficacy of an official regulation promulgated by a state agency. It is clear that a three-judge court is required where there is a federal constitutional challenge to a state regulation. Thus whether a three-judge court should be convened depends on whether Rule 2 qualifies as an administrative regulation. The rule is statewide. Where activities of a political party directly affect the electoral process, those activities are said to constitute state action. Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953); Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944). I would hold that the Delaware Republican State Committee, in this context, has the responsibilities of a statewide administrative agency, that its Rule 2 has the efficacy of an administrative regulation, and that a challenge thereto requesting injunctive relief requires a three-judge court.
 
 
 24
 ROSENN, Circuit Judge (dissenting).
 
 
 25
 I believe that a remand for the convening of a three-judge court to consider the constitutionality of the Delaware statutes or of the Republican party rule is neither necessary nor desirable.
 
 I.
 
 26
 A brief review of the background of this litigation may be helpful for an understanding of my specific objections to the remand required by the majority.
 
 
 27
 Under current Delaware law, no one may get onto a party primary ballot unless he received at least 35% Of the vote at the party's nominating convention. If a person seeking his party's nomination as a candidate in the general election receives 50% Of the delegate vote at the nominating convention, and no other person receives at least 35% Of the vote, that person becomes the party's nominee. 15 Del.C. 3116, 3301(c)(i).[1] If an additional person receives at least 35% Of the vote, at his request a party primary is held. 15 Del.C. 3116. The person receiving a majority of the atlarge votes in the party primary is certified as the party nominee. 15 Del.C. 3301(c)(i), (ii). The ultimate party nominee will therefore have either been nominated at the convention or will win a primary that was required as a result of the convention vote.
 
 
 28
 Because of the significance of the nominating convention in the selection of the party's ultimate nominee, the allocation of delegates to the convention is crucial. As no state statute specifically addresses this question, allocation is determined by party rule. The State Republican Committee allocates 120 of 220 delegates to four convention districts of disparate population on the basis of 30 delegates to each district. The remaining 100 delegates are allocated among the four districts on the basis of one delegate for each 1% Of the statewide Republican party vote which was cast by voters in that district during the preceding presidential election. Rule 2, Republican State Committee. The Republican party delegate allocation formula is challenged in this appeal by the voters of the most populous convention district, New Castle County, on the ground that the allocation denies them equal voting strength in the party nominating process, in violation of the Equal Protection Clause of the Fourteenth Amendment.
 
 
 29
 The district court granted plaintiffs' motion for summary judgment, holding that the Republican party delegate allocation formula was unconstitutional.[2] Because of the disparity of population in the four convention districts, it held that the allocation of an equal number of delegates to each district (i.e., 30) results in highly disproportionate voting strength. The court enjoined all future use of the allocation formula and further ordered the state committee to devise an allocation formula consistent with the one-man, one-vote principle. The court held that the party function in nominating candidates for statewide and national office constituted 'state action,' and that the one-man, one-vote principle applied to nominating conventions. The court considered and rejected contentions regarding the 'political' nature of the controversy, the alleged justifications for the formula, and the propriety of a three-judge court as opposed to a single-judge court.[3] The defendants have appealed.
 
 
 30
 Neither Judge Gibbons nor Judge Aldisert reach the merits of this controversy. For somewhat different reasons, each would remand the case to a three-judge court, unless the plaintiffs withdraw their request for injunctive relief.
 
 II.
 
 31
 I first consider the approach taken by Judge Gibbons. He would remand the case to the district court with directions to consider the constitutionality of 15 Del.C. 3116 and 3301(c). As I read his opinion, the denial of equal voting strength to voters in the Republican primary flows from the combination of (1) the party rule that provides for equal allocation of convention delegates to districts unequal in population, and (2) the state statute that limits condidates in a party primary to those who received at least 35% Of the delegate vote at the party's nominating convention.
 
 
 32
 Judge Gibbons suggests that this denial of equal voting strength can be remedied by two alternative means if necessary to avoid a constitutional violation. The first alternative, which was the approach taken by the district court, is to invalidate the party rule, in effect upholding the state statute. The result is a party nominating convention in which delegates are apportioned on a one-man, one-vote basis. The second alternative, proposed by Judge Gibbons although neither presented to nor considered by the district court, is to allow the party rule to stand but to declare unconstitutional the Delaware statute that limits candidates in a party to those receiving at least 35% Of the vote at the nominating convention, 3116. The effect would be to create a primary open to all Republican party members and to limit the power of the convention to nothing more than an endorsement of a candidate. Because the ultimate party nominee would be selected at an at-large primary election on a one-man, one-vote basis, no denial of equal voting rights would occur.
 
 
 33
 I disagree for several reasons with Judge Gibbons' direction to the district court to consider the constitutionality of 3116 on remand. An appellate court should not suggest the drastic alternative of declaring a state legislative enactment unconstitutional, when none of the litigants request such relief. Although the complaint lists two Delaware statutes, 101[4] and 3301(c),[5] the statute with which the majority is concerned, 3116,[6] is nowhere mentioned in the complaint. Nor do I believe that a fair reading of the complaint allows the inference that the plaintiffs sought to attack the constitutionality of 3116. In the course of briefing in the district court, moreover, plaintiffs expressly disclaimed any challenge to the constitutionality of Delaware statutes, directing their attack solely to the party rule. In response to a suggestion by defendants that a three-judge court was required in light of the complaint, plaintiffs stated:
 
 
 34
 In the present case, plaintiffs challenge the constitutionality of the delegate apportionment formula utilized by the State Republican Committee, under color of state law, in allocating delegates among the four Convention Districts. The immediate source of this unconstitutional result is Rule 2 of the Rules of the Republican State Committee, not any statute of the State of Delaware. Therefore, a three-judge court is not required and would not be proper in the present case.
 
 
 35
 Plaintiffs' Reply Brief in Support of their Motion for Summary Judgment, at p. 31; Docket No. 21. Significantly, neither did the defendants raise the alternative of the unconstitutionality of 3116.
 
 
 36
 Moreover, even were the constitutionality of both Rule 2 and of 3116 at issue in the district court, I believe that the constitutionality of the rule should be considered before the constitutionality of the statute is reached. This approach is dictated by traditional judicial deference to state legislatures, and judicial reluctance to declare state regulatory programs unconstitutional.
 
 
 37
 Judge Gibbons would no doubt maintain that departure from the traditional deference to state regulatory programs is warranted in the instant case because of the Republican party's interest in freedom of association. I am unpersuaded by this argument for three reasons.
 
 
 38
 First, I believe that the majority's concern with the party's first amendment rights should be directed to the preliminary question of whether the party activity is 'state action.' See Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). Judge Gibbons states, without extended discussion, that the district court's findings in favor of state action are 'obviously correct.' At this point I believe that the quasi-governmental entity's freedom of association is no longer of central importance.
 
 
 39
 Second, even assuming we should consider the party's first amendment interests, I do not believe that invalidating the state statute would significantly avoid interference with the party's freedom to associate. Invalidating the statute would permit any party member to challenge in a primary to convention's choice of candidates. In the primary, party voters may not give deference to the convention's choice. To the extent that this is true, invalidating the statute, or invalidating the rule directly, would result in the same interference with the party's first amendment interest in the convention process.
 
 
 40
 Finally, invalidating the statute while upholding the party rule would result in (1) the present convention delegate allocation based on factors other than population or party voting strength, combined with (2) unlimited access to the primary ballot by party members desiring to challenge the candidate endorsed by the convention. Invalidating the rule while upholding the statute would result in (1) a convention delegate allocation based entirely upon population or party voting strength, combined with (2) access to the primary ballot limited to those receiving at least 35% Of the vote at the nominating convention. As Judge Gibbons notes, the political parties in Delaware were no doubt influential in obtaining passage of the statute limiting access to the primary ballot. It is by no means clear, therefore, that the Republican party would prefer the first set of conditions to the second set. It is thus difficult to understand Judge Gibbons' conclusion that invalidating the statute presents less of an intrusion into the party's first amendment interests than does invalidating the rule.
 
 III.
 
 41
 I now turn to the approach taken by Judge Aldisert. Apparently concluding that the constitutionality of 3116 need not be considered by the district court on remand, he states that 'whether a three-judge court should be convened depends on whether Rule 2 qualifies as an administrative regulation.' He answers this question in the affirmative. As I read his opinion, he reasons that given the context of the Delaware election system, once there is a finding that the rule involves state action, the rule becomes a state administrative order within the meaning of 28 U.S.C. 2281.[7] Judge Gibbons, although he does not decide the question, appears to agree that even a challenge directed solely to the party rule requires the convening of a three-judge court. As discussed below, I disagree with this conclusion.[8]
 
 
 42
 The Supreme Court has repeatedly stated that 'the three-judge court statute is to be strictly construed.'[9] Considerable significance, therefore, must be attached to the point, apparently conceded by Judge Aldisert, that in this case the literal requirements of 2281 have not been met. The party rule is not a state statute or order of a state administrative board or commission, and the private defendants are not state officers.
 
 
 43
 Moreover, there is no reason in this case to expand the scope of 2281 beyond its literal language. The Supreme Court has stated that 2281 provides
 
 
 44
 procedural protection against an improvident statewide doom by a federal court of a state's legislative policy.
 
 
 45
 Phillips v. United States, 312 U.S. 246, 251, 61 S.Ct. 480, 483, 85 L.Ed. 800 (1941). The state has expressed no legislative interest in any particular Republican party delegate apportionment formula, as is evidenced by the complete silence of the Delaware statutes on the question.
 
 
 46
 I note that even under present judicial construction, the scope of the term 'State statute' under 2281 is narrower than the scope of 'state action' under the fourteenth amendment. A three-judge court is required under 2281 'not merely because a state statute is involved but only when a state statute of general and statewide application is sought to be enjoined.' Moody v. Flowers, 387 U.S. 97, 101, 87 S.Ct. 1544, 1548, 18 L.Ed.2d 643 (1967). Thus, state statutes of local application, although clearly state action, do not come within 2281. See Moody v. Flowers, supra. I do not believe, therefore, that when a nominally private group promulgates a rule which is held to be 'state action' for fourteenth amendment purposes, that rule is then automatically a state statute or administrative order for purposes of 2281 and the nominally private defendants are then automatically state officers within the meaning of the statute.[10]
 
 
 47
 In any event, even if Rule 2 of the Republican party could somehow be deemed a state administrative order under 2281, I do not believe that the rule meets the judicially imposed requirement that it be of statewide application. The rule, although it applies to Republicans spread throughout the state, does not apply to any other political party. This situation is similar to that in Board of Regents, supra. The Supreme Court there held that 2281 did not apply to a challenge to a rule promulgated by the State Board of Regents which did not apply to all the public institutions of higher education in the state, even though the institutions to which the rule did apply were spread throughout the state.
 
 
 48
 For these reasons, I perceive no justification for an expansion of the circumstances under which a three-judge court is required. This is particularly true in light of the many competing demands on judicial resources and the heavy burden imposed on the Supreme Court by direct appeals from three-judge courts.
 
 
 49
 In view of the disposition of the case by my colleagues, I do not discuss the issue of the constitutionality of Rule 2.
 
 
 
 [1]
 Redfearn v. Delaware Republican State Committee, 362 F.Supp. 65 (D.Del.1973)
 
 
 [2]
 The statutes on primary elections are collected in Note, Primary Elections: The Real Party in Interest, 27 Rutgers L.Rev. 298 n. 1 (1974)
 
 
 [1]
 Party conventions are required to continue roll call votes until at least one person receives greater than 50% Of the vote. 15 Del.C. 3301(c)
 
 
 [2]
 The district court stated:
 The Court does find and declare . . . that the State Convention delegate allocation formula set forth in Rule 2 of the Republican State Committee violates plaintiffs' rights under the equal protection clause of the Fourteenth Amendment. . ..
 Redfearn v. Delaware Republican State Committee, 362 F.Supp. 65, 74 (D.Del.1973).
 
 
 [3]
 The court rejected the three judge court contention on the ground that plaintiffs' challenge was to the party rule and not to a state statute or administrative order
 
 
 [4]
 15 Del.C. 101 defines a party as follows
 'Party' or 'political party' means any political party, organization or association which elects delegates to a national convention, nominates candidates for electors of president and vice-president, United States senator, representative in congress, governor and other offices, and elects a state committee and officers of a state committee by a state convention composed of elected members from each representative district, provided a registered party member is available in each representative district.
 
 
 [5]
 15 Del.C. 3301(c) provides:
 No candidate for the office of elector of president and vice president, United States senator, representative in congress, governor or other state officer to be voted for on a statewide basis, shall be deemed nominated and no certificate of nomination for such candidate shall be made or filed, nor shall the name of any such candidate be placed on the ballot in any general election in this State, unless the candidate:
 (i) shall have been so nominated by receiving more than 50% Of the eligible delegate vote on the final polled vote of a State nominating convention of the political party advancing his candidacy, at a convention held not later than the 4th Saturday in July in the year of such general election and who was not required to run in a primary election; or
 (ii) shall have received a majority of the votes cast by registered voters of the political party advancing his candidacy at a statewide primary election held pursuant to the provisions of Chapter 31 of this title.
 No such state nominating convention shall have completed its business relative to such nominations until such time as 1 nominee for each of the aforesaid offices shall have received a vote greater than 50% Of the total number of eligible delegate votes at such convention, which polled vote shall be considered final.
 
 
 [6]
 15 Del.C. 3116 provides:
 The presiding officer and secretary of the convention of any political party shall certify to the several departments of elections, the state election commissioner, and the secretary of state, the names of all persons receiving at least 35% Of the eligible votes cast on the final polled vote in the convention for the nomination of United States senator, representative in congress, governor and other state offices. The final polled vote shall be when 1 of the nominees for each of the above offices shall have received a vote greater than 50% Of the total number of eligible delegate votes at such convention. Such certification shall be made within 5 days of such final vote. When the names of 2 such persons are so certified with respect to any office, a primary election shall be held on the Saturday immediately following the 1st Monday in September in all districts in which votes may be cast at the general election for that office and in the same manner as elsewhere provided in this title for primary elections, provided that the person receiving the lesser number of votes cast at the convention with respect to any office, shall, within 5 days of such final vote give notice pursuant to section 3107(a)(1) and (b) of this title.
 
 
 [7]
 28 U.S.C. 2281 provides:
 An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.
 
 
 [8]
 I agree with Judge Aldisert's implicit conclusion that the challenge to Rule 2 is not a challenge to any Delaware state statutes 'as applied.' Rather, the attack on the rule is an attack on the 'unconstitutionality of the result obtained by the use of a statute which is not attacked as unconstitutional,' and therefore does not require a three-judge court. Ex Parte Bransford, 310 U.S. 354, 361, 60 S.Ct. 947, 951, 84 L.Ed. 1249 (1940). See also United States v. Christian Echoes Ministry, 404 U.S. 561, 565, 92 S.Ct. 663, 30 L.Ed.2d 716 (1972); Griffin v. School Board, 377 U.S. 218, 228, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964)
 
 
 [9]
 Board of Regents v. New Left Education Project, 404 U.S. 541, 545, 92 S.Ct. 652, 655, 30 L.Ed.2d 697 (1972). See also, Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974)
 
 
 [10]
 See Smith v. State Executive Committee, 288 F.Supp. 371, 374 (N.D.Ga.1968) (attack on party rule does not require three-judge court as no attack was made on underlying statute) (dictum); Maxey v. Washington State Democratic Committee, 319 F.Supp. 673 (W.D.Wash.1970) (single judge holds party rule on delegate allocation unconstitutional, without discussion of three-judge courts); Bond v. Dentzer, 325 F.Supp. 1343, 1348-1350 (N.D.N.Y.1971) (attach on state wage assignment statute does not require three-judge court, despite naming of state officer who 'plays no role in implementation of (challenged statute)' which is self-implementing; private party defendants are not state officers within meaning of 2281); Klim v. Jones, 315 F.Supp. 109, 112-113 (N.D.Cal.1970) (attack on state innkeeper's lien statute does not require three-judge court 'because no . . . state or local officer has been named as a defendant or is sought to be restrained'); Adams v. Egley, 338 F.Supp. 614, 616-617 (S.D.Cal.1972) (attack on state commercial code provisions authorizing repossession after default of debtor does not require three-judge court 'since no action of either a state or local officer is sought to be restrained'). See also Dahl v. Republican State Committee, 319 F.Supp. 682, 683 (W.D.Wash.1970). But see Harper v. Vance, 342 F.Supp. 136, 139 (N.D.Ala.1972) (challenge to party rule requiring filing fees requires three-judge court as rule constitutes order of state 'administrative board')