B. Wilson **REDFEARN** et al.,
Plaintiffs,

v.

**DELAWARE REPUBLICAN STATE
COMMITTEE** and Herman C. Brown,
Chairman, Defendants,

Basil R. Battaglia et al., Inter-
vening Defendants,

James H. Baxter, Jr., et al., Inter-
vening Defendants,

Charles G. Lamb et al., Inter-
vening Defendants.

Civ. A. No. 4528.

United States District Court,
D. Delaware.

April 2, 1975.

B. Wilson Redfearn, pro se.

William O. LaMotte, III, and Thomas Reed Hunt, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for plaintiffs other than Redfearn.

William Swain Lee, Georgetown, Del., for defendants.

Victor F. Battaglia and Gary W. Aber, Biggs & Battaglia, Wilmington, Del., for intervening defendants, Basil Battaglia and others.

Howard T. Ennis, Jr., Georgetown, Del., for intervening defendants, James H. Baxter and others.

A. Richard Barros, Dover, Del., for intervening defendants, Charles G. Lamb and others.

## OPINION

LATCHUM, Chief Judge.

In prior proceedings of this case, this Court granted plaintiffs' motion for summary judgment, declaring: (1) that the State Convention delegate allocation formula set forth in Rule 2 of the Republican State Committee and (2) the Republican State Committee's traditional practice of allocating Delaware's delegates and alternate delegates to the Republican National Convention equally among the existing four Republican Convention Districts violated plaintiffs' rights under the equal protection clause of the Fourteenth Amendment. The Court also enjoined the future use of those formulae and directed the Republican State Committee to devise new formulae for the allocation of delegates to the state nominating convention and the allocation of delegates to the national nominating convention consistent with the one-man, one-vote principle. Redfearn v. Delaware Republican State Committee, 362 F.Supp. 65 (D.Del.1973). Upon appeal, a division of the Third Circuit Court of Appeals, composed of Judges Aldisert, Gibbons and Rosenn, reversed and remanded. Redfearn v. Delaware Republican State Committee, 502 F.2d 1123 (C.A. 3, 1974). The Third Circuit Judgment received on October 1, 1974 in lieu of a formal mandate provided in relevant part that this Court's judgment of August 20, 1973 ". . . is hereby reversed and the cause remanded . . . for further proceedings consistent with the opinion of this Court." (Docket Item 37).

Since further proceedings in this court must strictly conform to the Court of Appeals' mandate as to matters within its compass, Briggs v. Pennsylvania R. Co., 334 U.S. 304, 306, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948); Holliday v. Pacific Atlantic S. S. Co., 117 F.Supp. 729, 732 (D.Del.1953), it is incumbent upon this Court to determine what the Court of Appeals' "opinion" de-

cided in order to ascertain what issues this Court is bound to consider and what action it is required to take.

Each of the three judges of the division wrote separate opinions. A close study of those opinions reveals that there was only one point of law upon which a majority of the division (Aldisert, J. and Gibbons, J.)[1] agreed. Judges Aldisert and Gibbons concurred for different reasons that a reversal was necessary because a three-judge district court was required under 28 U.S.C. § 2281[2] "as long as plaintiffs insist on injunctive relief." 502 F.2d at 1129.

Judge Gibbons reasoned that "although the order appealed from was in form an injunction against the operation of the party's internal rules, those rules implicated state action only by virtue of 15 Del.C. §§ 101, 3301(c) and 3116,[3] and the injunction is against those statutes as applied to the Republican State Committee." 502 F.2d at 1125. Thus, Judge Gibbons concluded that, since the Court's injunction was in effect issued against the "enforcement, operation or execution of State statutes," it was by virtue of 28 U.S.C. § 2281, beyond the power of a single-judge district court to issue. 502 F.2d at 1128–29.

On the other hand, Judge Aldisert was of the opinion that a three-judge district court was required under § 2281 because the injunction ran against a statewide rule of the Republican Party which was so inexorably intertwined with the state election process that the rule had to be considered an administrative regulation of statewide operation within the meaning of 28 U.S.C. § 2281. 502 F.2d at 1129.

Hence it is quite clear that the majority of the court agreed, albeit for different reasons, that this Court's judgment of August 20, 1973 should be reversed because the injunctive relief granted was beyond the power of a single district judge. The majority also agreed that if the plaintiffs upon remand should withdraw their prayer for an injunction leaving only their request for declaratory relief, the case could properly proceed before a single judge. 502 F.2d at 1129. Following remand the plaintiffs withdrew their demand for injunctive relief. (Docket Item 38).

There is no question that had the plaintiffs persisted in their demand for injunctive relief, strict compliance with the mandate would have required this Court to request the convening of a three-judge district court pursuant to 28 U.S.C. § 2284. But since the plaintiffs no longer seek injunctive relief, the necessity for convening a three-judge district court disappears and all this Court need do under the mandate is to revise its August 20 judgment to eliminate its injunctive provisions. This is so because it is necessary for a majority of the Appeals Court to agree before a principle can become "law of the case" binding upon the lower court. Rule 2(5) U. S. Court of Appeals For Third Circuit; 28 U.S.C. § 46(d); see 1B Moore's Fed.Prac. ¶ 0.404[10], n. 1.

One other issue was discussed by the Court of Appeals which confronts this Court with a rather unique situation. Judge Gibbons would require this Court on remand to consider declaratory relief against the continued operation of 15 Del.C. 1953 ed. § 3301(c) [now 15 Del.C., Rev.1974, § 3301(e)][4] and §

---

1. Judge Rosenn dissented.

2. 28 U.S.C. § 2281 provides:
"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge

thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

3. The Code and section references referred to Delaware Code Annotations, 1953.

4. Since the former opinions in this case, the Delaware Code has been issued in a Revised 1974 edition.

3116 [now 15 Del.C., Rev.1974, § 3113] as an alternative to declaring Rule 2 of the Republican Party unconstitutional. 502 F.2d at 1128. Judge Rosenn disagreed with Judge Gibbons' approach to this issue for a number of reasons and took the position that this Court should not be required to consider the constitutionality of any state election statute. 502 F.2d at 1131–1133. Judge Aldisert gave no indication at all of his position on that question. 502 F.2d at 1129. Accordingly, since only one member of the division would now require consideration of the additional issue raised by Judge Gibbons, it appears that nothing need be done by this Court under the mandate of the Court of Appeals other than to merely re-enter the declaratory and non-injunctive portions of its August 20, 1973 judgment.

Nevertheless, while this Court may not be bound to consider the issue raised by Judge Gibbons since it was not a matter upon which a majority of the division agreed and consequently was not within the compass of the mandate, this Court appears to be free to consider that issue as a matter of discretion. See, e. g., Sprague v. Ticonic National Bank, 307 U.S. 161, 168, 59 S.Ct. 777, 83 L.Ed. 1184 (1939).

Because this Court possibly may have misinterpreted Judge Aldisert's silence with respect to the issue discussed by Judge Gibbons and in order to avoid further delay in the final disposition of this case and to conserve judicial effort, this Court concludes that it should consider Judge Gibbons' alternative to declaring Rule 2 unconstitutional and it now turns to that question.

In addition to the very pertinent reasons advanced by Judge Rosenn, this Court after due consideration finds and concludes that Judge Gibbons' alternative of declaring 15 Del.C., Rev.1974, § 3301(e) and § 3113 [5] unconstitutional

would be neither feasible nor effective for the following reasons:

1. As I understand Judge Gibbons' opinion, he would remand the case to this court with directions to consider the constitutionality of 15 Del.C., Rev.1974, §§ 3301(e) and 3113 because he was of the opinion that the denial of equal voting strength in the primary election held for delegates to the Republican state nominating convention arose from a combination of (1) Rule 2 of the Republican Party which provides for the equal allocation of convention delegates to districts which are unequal in population and (2) the state statute (§ 3113) that limits candidates for statewide and national office from participating in a run-off direct primary election to those who received at least 35% of the delegate vote cast at the party's state nominating convention. While Judge Gibbons recognized that the inequality of voting strength could be remedied by invalidating the party rule and requiring nominating convention delegates to be apportioned in accordance with the one-man, one-vote principle as this Court had previously ordered, he believed that an alternative and better approach would be for this Court to allow the party rule to stand but to declare unconstitutional 15 Del.C., Rev.1974, §§ 3113 and 3301(e), the Delaware statutes that limit a run-off direct primary election for statewide and national offices to those candidates who receive at least 35% of the vote at the state nominating convention. Judge Gibbons was of the opinion that declaring these two state statutes invalid, while leaving unaffected the party rule which malapportioned the delegates to the state nominating convention, would afford greater protection to the Republican Party's associational rights guaranteed by the First Amendment.

Judge Gibbons' approach was based on his belief that declaring §§ 3113 and 3301(e) unconstitutional would have the

---

**5.** The reference to the code provisions referred to by Judge Gibbons will be to the Del.Code, 1974 Revised Edition.

effect of creating a direct primary for all statewide and national candidates that would be open to all Republican Party members despite the action that might have been taken by the state nominating convention, and thus, because the ultimate party nominee for the statewide or national office would be selected at an at-large direct primary election on a one-man, one-vote basis, no denial of equal voting rights would occur. In this connection Judge Gibbons wrote:

"Prior to 1969 the method of becoming a party candidate was both simple, and from the point of view of state involvement, neutral.

'Any person desiring to be voted for as a candidate for nomination at any primary election shall notify the County Committee of which he is a member, in writing at least 15 days before such primary election is held.' 15 Del.C. § 3107 (amended by 57 Del.Laws ch. 241 § 5; 57 Del.Laws ch. 567 § 18C). [New 15 Del.C.Rev.1974 § 3106.]

\* \* \* \* \* \*

"But because prior to 1969 mere notice of intention to become a candidate sufficed for a candidate to obtain a place on the primary ballot, the internal party organization had no legal though perhaps a significant practical effect on the ultimate party nominee. Thus prior to 1969 there was no legally significant tension between a Delaware political party's right to determine its own makeup and the one man, one vote principle. In 1969, however, the legislature (one may presume at the invitation of the major parties) intruded into the internal affairs of political parties in a significant way by amending 15 Del.C. § 3107 [now 15 Del.C., Rev.1974, § 3106] with respect to the manner of becoming a primary election candidate for statewide office, and by the addition of 15 Del.C. §§ 3116 [now § 3113] and 3301(c) [now § 3301(e)] imposing new legal obligations on political parties. Section 3301(c) [now § 3301(e)] provides

that no candidate for the office of Elector of President and Vice President, United States Senator, Representative in Congress or State Officer elected statewide may be deemed nominated for the general election unless he has either received more than 50% of the eligible delegate vote at a party nominating convention or has received a majority of the votes cast in a party primary election. The section provides further:

'No such state nominating convention shall have completed its business relative to such nominations until such time as 1 nominee for each of the aforesaid offices shall have received a vote greater than 50% of the total number of eligible delegate votes at such convention, which polled vote shall be considered final.'

"There is no way to get on the general election ballot as a candidate for statewide office other than by a convention nomination or a primary election. By virtue of 15 Del.C. § 3116 [now § 3113] a primary election will be held only after one candidate at a party nominating convention receives 50% of the total number of eligible delegate votes, and only if one other candidate in the final polled vote at the convention receives at least 35% of the eligible delegate votes cast. The effect of these provisions is to restrict access to the general election ballot to no more than two candidates from each political party which is large enough to be eligible to hold a primary election." [Words added].

The fallacy underlying Judge Gibbons' approach is that his legal theory is based upon the mistaken view that old 15 Del.C., 1953, § 3107 permitted anyone who desired to become a Republican Party candidate for a statewide or national office to obtain a direct primary election simply by giving notice to the County Committee of his desire to be on the ballot. This, however, has never

been the law of Delaware nor the custom and practice of any political party in this State.

Historically under Delaware law, political parties have always had the choice between a direct primary and the convention system for nominating candidates for national, state, county, district and municipal offices. Merriam & Overacker, Primary Elections (1928) pp. 41–42, 58–59, 65, 93–94, 365; Vol. 1, Delaware, A History of the First State (Reed, ed., 1947), p. 342; Opinion of the Justices, 295 A.2d 718, 721 (Del. Sup.1972). Direct primaries were first used in Delaware by political parties for municipal elections in Wilmington and the use of direct primaries spread during the last quarter of the 19th Century to New Castle County for the nomination of candidates for the general assembly and county offices. Vol. 1, Delaware, A History of the First State, supra; Merriam & Overacker, supra at 27, 37. On May 27, 1897, an Act was passed, the forerunner to our present primary laws, to provide for the purity of primary elections in New Castle County. 20 Del.Laws, c. 393. The Act, based on the State's police power, simply provided voting safeguards and methods for conducting a political party primary election, whether it was an indirect primary for the election of delegates to a city, county or state nominating convention which in turn selected the party candidates for public office or whether it was a direct primary for the election of candidates through direct voting by qualified party members. The Act did not attempt to dictate to political parties whether party nominations were to be made by convention delegates or by a direct primary. This option was left entirely within the discretion of the governing body of each political party. 20 Del.Laws, c. 393 §§ 19 & 2; Merriam &

Overacker, *supra* at 58–59, 65, 99–100; State ex rel. Willis v. Keenan, 181 A. 213, 216 (Del.Super.1935). The Act providing for the purity of primary elections, 20 Del.Laws c. 393, was not extended to apply to Kent and Sussex Counties until March 26, 1913. 27 Del. Laws, c. 66; Merriam & Overacker, *supra* at 63.

As time passed between the turn of the century and into the early 1930's, the county political parties in Kent and Sussex Counties also began to abandon the use of the county convention system for the nomination of candidates for the general assembly and county officers in favor of direct primaries for these local public offices. Vol. 1, Delaware, A History of the First State, p. 242.

On the other hand, *no state* political party in Delaware, including the Republican Party, has ever exercised the option of holding an initial direct primary election for the nomination of candidates for statewide offices,[6] national office,[7] Presidential and Vice Presidential electors or delegates to a National Convention. Vol. 1, Delaware, A History of the First State, p. 343; Delaware Politics 1904–1954, Hastings; Rule 5.3, Rules of The Democratic Party of the State of Delaware; Rules 16, 17(a), 18, 20(a) & 29(a), Rules of The Republican Party of the State of Delaware (Docket Item 7, Exhibit A).

It was not until 1969 that the legislature by the adoption of 15 Del.C., 1953, § 3116 [now 15 Del.Code, Rev.1974, § 3113] provided a "run-off" direct primary election to any statewide or national candidate who received 35% of the vote of the delegates cast at a state convention if that candidate demanded a statewide run-off primary between himself and the candidate who had received at least 50% of the delegates' votes at the convention.

6. The statewide offices are Governor, Lt. Governor, Attorney General, Insurance Commissioner, State Auditor and State Treasurer.

7. The national offices are for Representative in Congress and United States Senator.

■ Consequently, it is clear that should this Court declare unconstitutional § 3116 [now § 3113] and § 3301(c) [now § 3301(e)], it would not have the effect that Judge Gibbons visualized of providing a direct primary for the nomination of statewide and national offices open to all Republican Party members who might wish to participate. This is so as discussed above because it is the governing body of the state political parties, and not prospective candidates, who decides whether party candidates will be nominated by the delegates to a state convention or by a direct primary election.

■ Thus, when Judge Gibbons referred to 15 Del.C., 1953, § 3107 as it existed prior to 1969, and stated that it provided that mere notice of intending to become a candidate sufficed for a candidate to obtain a place on a primary ballot, he failed to realize that this was true only with respect to those direct primary elections for the nomination of local offices which the parties themselves decided to hold. Thus, from a practical and realistic standpoint, § 3107 as it existed prior to 1969 only applied to direct primaries for the nomination of members of the general assembly, county and local offices. Indeed, this is reflected in the pre-1969 language of § 3107 itself. Notice of intent to become a candidate for the general assembly, county or other local office was required to be given to the County Committee and the amended section 15 Del.C., Rev. 1974, § 3106(c) makes explicit what in fact had been traditionally followed for years. Consequently, if this Court were to declare § 3116 [now § 3113] and § 3301(c)· [now § 3301(e)] unconstitutional, it would not have the effect of establishing a direct primary election for the nomination of candidates for statewide and national offices open to all Republican Party members. The Republican Party would remain free as it has in the past to nominate such candidates at a state convention composed of delegates selected on a malapportioned basis which this Court previously found to be violative of the equal protection clause of the Fourteenth Amendment because the apportionment of convention delegates ignored the one-man, one-vote principle.

2. This Court also previously concluded that the traditional and historical practice of allotting an equal number of Republican National Convention delegates to each of the four Convention Districts, whose population and registered Republican votes are disproportionate, was unconstitutional. Since § 3116 [now § 3113] and § 3301(c) [now § 3301(e)] do not provide for a run-off direct primary for such national delegates, declaring those two statutes invalid would have no impact whatsoever on the existing and past method of selecting delegates to the Republican National Convention. Delegate malapportionment would remain.

3. Finally, even if § 3116 [now § 3113] were declared invalid, the run-off direct primary election would continue to be limited to the two candidates who received 50% and 35% of the delegate votes cast at the state nominating convention. This is so because Rule 20(b) of the Republican State Committee has implicitly preserved that right by internal rule independent of the statute. (Docket Item 7, Exhibit A, p. 5). Consequently, the run-off direct primary preserved by Rule 20(b), would not open that primary to all Republican Party members who might wish to be considered as party nominees for statewide or national offices. To accomplish Judge Gibbons' objective would require this Court to declare Rule 20(b) invalid which according to Judge Gibbons would seem to constitute an equally obnoxious intrusion into the associational rights of the Republican Party as the limited intrusion originally taken by this Court. However, even declaring Rule 20(b) invalid, if permissible, would not for the reasons set forth above be effective to create an open primary.

It is thus quite obvious that Judge Gibbons' alternative suggestion would

not be meaningful or effective to rectify the constitutional violations faced by this Court.

The Court will therefore reinstate its previous judgment finding and declaring that the State Convention delegate allocation formula set forth in Rule 2 of the Republican State Committee and the traditional practice of allocating Republican National Convention delegates equally to each of the four Convention Districts violate plaintiffs' rights under the equal protection clause of the Fourteenth Amendment as both practices violate the one-man, one-vote principle. Since injunctive relief is no longer sought, the reinstated judgment will eliminate the earlier provisions for injunctive relief.

Judgment will be entered in accordance with this opinion.